**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | NO. 5:25-CR-00010-KKC-MAS |
| ) | |
| **WILLIAM JACK STAUFFER,** ) | |
| ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**MEMORANDUM OPINION & ORDER**

The Indictment alleges that Defendant William Jack Stauffer ("Stauffer") knowingly received and possessed visual depictions of a minor engaged in sexually explicit conduct in violation of 18 U.S.C. § 2252(a)(2) and (a)(4)(B). The United States properly moved for Stauffer's detention under 18 U.S.C. § 3142(f)(1)(A) & (E). Based on the testimony, proffer, arguments, and the Pretrial Services Report ("PSR") tendered by the United States Probation Office, the Court finds that Stauffer's release poses an irremediable risk of danger to the community and accordingly grants the government's motion for detention for the reasons explained below.

**I.   BACKGROUND**

The Court held a detention hearing on February 26, 2025. [DE 14]. According to Task Force Officer Blake Lizer ("TFO Lizer") law enforcement became aware of the conduct underpinning Stauffer's federal charges following an investigation by local

law enforcement in Franklin County. Law enforcement learned that Stauffer had posted Facebook advertisements seeking female auditionees who could pass as high school-aged or as 11-year-olds after being contacted by a mother of one auditionee. [Gov't Ex. 1]. The mother reported to the Frankfort Police Department that, after her daughter auditioned for Stauffer, she became alarmed when Stauffer expressed his intent to create a film depicting a young girl being sold into sexual slavery. She conducted her own inquiry and discovered that Stauffer was a registered sex offender.

The Franklin County Sheriff's Office took over the investigation, focusing on potential violations of K.R.S. Chapter 17—specifically, whether Stauffer unlawfully failed to obtain written parental consent before filming a minor, as required when the filmmaker is a convicted sex offender. *See* K.R.S. § 17.546(2) ("No registrant shall intentionally photograph, film, or video a minor . . .without the written consent of the minor's parent, legal custodian . . . . The written consent . . . shall state that the person seeking the consent is required to register as a sex offender under Kentucky law."). As part of the investigation, law enforcement obtained a search warrant for Stauffer's residence at 694 Pea Ridge Road, which was executed on October 30, 2024. During the search warrant execution, law enforcement used a program to conduct an initial previous of Stauffer's computer, with his consent. During this initial preview, TFO Lizer observed content suggestive of child sexual abuse material ("CSAM").

Following the initial preview, a subsequent digital forensic examination was conducted on the numerous electronic devices that were seized from the residence. These devices included two Samsung Galaxy cell phones, an external hard drive, and

a desktop computer, as well as SD cards which were found in Stauffer's computer room. The forensic examination revealed approximately 944 images or videos of child sexual abuse material across at least three of the devices. TFO Lizer provided the Court an overview of the types of images found, including multiple still images of a prepubescent females with exposed genitalia. TFO Lizer testified that those images were consistent with the remaining videos and pictures found on Stauffer's devices. The forensic examination also revealed that the metadata associated with the files provided date and time stamps for when they were downloaded. One image was downloaded as recently as August 2024, while there were some images with metadata dating back to 2013. These images and videos being on Stauffer's devices form the basis for his charges under 18 U.S.C. § 2252(a)(2) and (a)(4)(B).

## II.     ANALYSIS

**A.     THE BAIL REFORM ACT**

The charges in the Indictment involve at least one minor victim, meaning that a detention presumption arises under the Bail Reform Act, 18 U.S.C. § 3141, *et seq.*, ("BRA") both as to a risk of nonappearance and as to a risk of danger to the community. 18 U.S.C. § 3142(e)(3)(E). In such cases, a defendant carries a "burden of production" to overcome the presumption by offering "at least some evidence" that he is neither at risk of nonappearance nor endangering the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). The production burden "is not heavy," and the Government retains the ultimate burden of persuasion. *Id.* If the defendant fails to rebut the presumption, he must be detained. Even if the defendant rebuts the presumption, the presumption remains a factor in determining detention.

*Id.* ("The presumption remains as a factor because it . . . reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial.").

However, if a defendant rebuts the presumption of detention, the burden shifts back to the United States to persuade the Court that detention is nevertheless warranted. Detention, based on danger, must rest on facts supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A flight-based (or, more accurately, nonappearance-based) detention decision must rest on facts supported by a preponderance of evidence. *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-82-DCR, 2006 U.S. Dist. LEXIS 49661, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Further, almost any conditional release ultimately depends on a court's assessment of a defendant's good faith intentions and predicted compliance with conditions imposed. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (evaluating predicted good faith compliance as critical release component).

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The hearing is informal, and the Court may consider a wide range of proof, weighing the evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291 [published in full-text format at 1998 U.S. App. LEXIS 13553], 1998 WL 381686, at *1 (6th Cir. June 22, 1998). The nature and quality of proof impacts its probative value and weight in the detention calculus. The § 3142(g) factors guide the analysis.

B.   **DEFENDANT'S RISK OF NONAPPEARANCE**

Preliminarily, the Court finds that Stauffer presented sufficient evidence to overcome the presumption of detention as to his risk of non-appearance. Defense counsel proffered that he has been cooperative, even going so far as to provide passcodes to law enforcement during the execution of its search warrant of his residence. He also offered testimony from two family friends, George Craig ("Craig") and Gordon Howe ("Howe"), who testified that they would assure his appearance in court. His wife, Lisa Neva ("Neva"), testified to the same. This testimony was probative of the likelihood that he will appear for future Court proceedings and therefore is enough to overcome Stauffer's burden of presumption.

Turning to whether the United States has established by a preponderance of the evidence that Stauffer presents a risk of nonappearance, the Court finds that the government has not met its burden. The government highlights Stauffer's criminal history, including a 1997 first-degree rape conviction, and potential violations of K.R.S. Chapter 17 as evidence of his disregard for legal requirements, suggesting an increased risk of flight. While these facts are concerning, they are more probative of his danger to the community and his likelihood of complying with release conditions, which the Court will address separately below.

The government further argues that Stauffer's history of failing to appear for court supports detention. The PSR reflects multiple failures to appear ("FTA") for cold check charges dating back to 2013, which resulted in warrants being issued. However, the Court finds these instances have limited probative value in assessing his current risk of nonappearance. First, the FTAs occurred over a decade ago,

diminishing their relevance in predicting Stauffer's present likelihood of appearing for court. Second, the underlying cold check offenses were relatively minor, and there is no indication that his failures to appear stemmed from an intent to evade prosecution rather than oversight or other factors. *See United States v. Smith*, No. CR 05-20104-KHV, 2005 WL 8164465, at *3 (D. Kan. Dec. 21, 2005) (finding that a single failure to appear for a domestic hearing did not establish a significant risk of flight).

Accordingly, while Stauffer's past court history warrants consideration, the government has not presented sufficient evidence to show that he presently poses a serious risk of nonappearance.

## C.    DEFENDANT'S RISK OF DANGER TO THE COMMUNITY

The Court likewise finds that Stauffer has presented sufficient evidence to rebut the presumption of detention as to dangerousness. Testimony from Stauffer's friends and wife attested positively to his character. Additionally, while the government alleges that he violated K.R.S. Chapter 17 by failing to disclose his sex offender status in certain situations, both Craig and Howe testified that Stauffer voluntarily disclosed his prior rape conviction. This voluntary disclosure is at least probative of his ability to be candid and comply with this Court's release conditions.

Further, testimony from Neva, corroborated by defense counsel's proffer, indicates that Stauffer would reside at a second property owned by Neva, which is remote and far removed from minors. This testimony satisfies the defendant's burden of producing "some evidence" that he does not pose a danger, thereby overcoming the presumption of detention. *See Stone*, 608 F.3d at 945; *United States v. Dominguez*,

783 F.2d 702, 707 (7th Cir. 1986) (requiring a defendant to present "some evidence that he will not flee or endanger the community if released"); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (holding that a defendant must present "probative, credible evidence to rebut the presumption and support his contention that he will appear . . . and [that] he does not pose a danger").

While Stauffer has rebutted the presumption of detention regarding his dangerousness, the Court finds that, under the BRA framework below, the government has proven by clear and convincing evidence that he remains an irremediable danger to others and the community.

1. **<u>Nature and Circumstances of the Offense</u>**

The first factor asks the Court to weigh "the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor. . . ." 18 U.S.C. § 3142(g)(1). Without question, Stauffer's alleged crimes involve at least one minor and are consequently crimes of violence. 18 U.S.C. § 3156 (defining "crime of violence" as used in the BRA to include "any felony under chapter . . . 117[.]"). *United States v. Champion*, 248 F.3d 502, 506 (6th Cir. 2001) (recognizing that violations of federal laws designed to protect minors constitute crimes of violence); *United States v. Campbell*, 256 F.3d 381, 397–8 (6th Cir. 2001); *see also United States v. Abad*, 350 F.3d 793, 798–99 (8th Cir. 2003) (recognizing that a crime involving a minor victim constitutes a crime of violence).

The allegations against Stauffer are crimes that Congress specifically set apart as so dangerous that they require the presumption of detention. *United States v. Jakits*, No. 23-3011, 2023 U.S. App. LEXIS 12137, at *4 (6th Cir. May 17, 2023) (quoting *Champion*, 248 F.3d at 506) ("Congress applied the presumption to offenses involving minors to emphasize that using children to produce sexually explicit materials 'can result in physical or psychological harm, or both, to the children involved . . . and its continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years.'"). Critically, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it. Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'" *United States v. Lattner*, 23 Fed. App'x. 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986).

The forensic review of Stauffer's devices revealed over 900 CSAM images and videos, which he has collected for over a decade and which implicate at least one minor victim who will be harmed for years to come. *United States v. Demarcus Bristuan Fitzhugh*, 2016 WL 4727480, at *5 (E.D. Mich., Sept. 12, 2016) ("Just one *sexually-related offense against just one minor is enough to imply dangerousness.*") (emphasis in original). This factor weighs heavily in favor of detention.

### 2. Weight of the Evidence of Dangerousness

The second factor—the weight of the evidence of a person's dangerousness—goes only to the likelihood that the defendant will pose a danger to

the community or a risk of flight; it is not a pretrial determination of guilt. *Stone*, 608 F.3d at 948. In weighing the strength of the evidence, the district court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j).

Given the facts alleged—and their inherent dangerousness—the weight of the evidence of dangerousness is inextricably intertwined with the weight of the evidence as to the crime alleged. Here, as discussed above, the volume of CSAM images and videos found on Stauffer's electronic devices found in his residence (to which only his wife and teenage stepdaughter appear to have access) weighs heavily in this Court's dangerousness analysis. And although the Indictment does not allege that Stauffer has committed any hands-on offenses involving minor victims, the Court notes that the presence of CSAM on Stauffer's electronic devices is immense evidence of danger. After all, "sexual exploitation of children via the internet, even without physical contact, harms children in real and lasting ways." *United States v. Pece*, No. 1:20-cr-186-1, 2020 U.S. Dist. LEXIS 197356, 2020 WL 6263640, at *5 (N.D. Ohio Oct. 23, 2020). This factor weighs heavily in favor of danger-based detention.

### 3. History and Characteristics of the Person

The history and characteristics of a defendant include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Additionally, they include whether the

defendant was on probation or parole when he committed the offense. 18 U.S.C. § 3142(g)(3)(B).

Here, the Court focuses primarily on Stauffer's criminal history, which has had enormous implications on his community ties and other past conduct. TFO Lizer, after reviewing criminal history, testified regarding his 1997 first-degree rape conviction in Oklahoma. Stauffer, 22-year-old at the time of his conviction, had vaginal intercourse with a 13 year-old female multiple times. The minor victim told law enforcement that their sexual relationship began in March 1996, when she was 12 years old. At the time, Stauffer took deliberate steps to conceal the relationship, instructing the minor victim to claim they were cousins, using an alias to avoid detection by her guardian, and telling her to slide down in her seat whenever she was in his car. His first-degree rape conviction was supported by physical evidence, including a used condom, his full confession, and the victim's statement. He was sentenced to five years' imprisonment.

As a result of his rape conviction, Stauffer is a lifetime registrant on the sex offender registry. The United States highlights several instances of noncompliance with Kentucky law as evidence of his disregard for the legal obligations associated with his sex offender status. As discussed above, law enforcement first became aware of Stauffer while investigating allegations that he failed to obtain written consent from the legal guardians of minors before filming them during auditions for a film he was producing.

Additionally, Neva testified that he attended school events for her daughter—his stepdaughter—without obtaining the required permission from school administrators, in violation of Kentucky law. TFO Lizer also testified that, among the CSAM images recovered from Stauffer's electronic devices, law enforcement also found videos of his stepdaughter's volleyball match. This evidence confirms not only that Stauffer was present at a school without authorization but also that he filmed minors without the informed, written consent of their guardians, as required under Kentucky law for registered sex offenders. *See* K.R.S. § 17.545(2)(a) ("No [sex offender] registrant . . . shall be on, loiter within one thousand (1,000) feet of [a school] . . . , except with the advance written permission of the school principal, [or] the school board, . . . [after being] given after full disclosure of the person's status as a registrant . . . .").

Stauffer's selective disclosure of his sex offender status raises significant legal and public safety concerns. The sex offender registry exists to "monitor[] and track[] sex offenders following their release into the community"[1] because sex offenders—particularly those who remain untreated—are widely recognized as having high recidivism rates. *See United States v. Downs*, 406 F. Supp. 3d 1314, 1320 (N.D. Fla. 2019) (citing *United States v. Jones*, 798 F.3d 613, 620 (7th Cir. 2015); *McKune v. Lile*, 536 U.S. 24, 33 (2002) (noting studies estimating the recidivism rate for untreated sex offenders to be as high as 80%); *United States v. Pugh*, 515 F.3d 1179,

---

[1] U.S. DEP'T OF JUST., *Sex Offender Registration and Notification Act (SORNA)*, https://www.justice.gov/criminal/criminal-ceos/sex-offender-registration-and-notification-act-sorna (last visited Mar. 6, 2025).

1201 (11th Cir. 2008) (observing that "child sex offenders have appalling rates of recidivism")).

Failure to comply with the obligations imposed by sex offender registration not only signals a potential danger to the community but also undermines any claim that the defendant will adhere to court-imposed conditions designed to mitigate that danger. *See United States v. Epstein*, 425 F. Supp. 3d 306, 319–20 (S.D.N.Y. 2019) (finding that a defendant's failure to comply with legal obligations as a sex offender contributes to the danger assessment). While the record does not indicate that Stauffer has failed to fulfill his basic sex offender registration requirements, the evidence suggests that he is selective in his disclosures. Although he presented testimony from two friends attesting to his candor about his past rape conviction, the record reflects multiple instances where he may have failed to comply with Kentucky laws *requiring* such candor—including unlawfully entering a school without permission and filming minors without obtaining the written, informed consent of their guardians regarding his sex offender status.

The Court is also troubled by Stauffer's recent interactions with Child Protective Services ("CPS") and his compliance with protection plans designed to prevent contact with his stepdaughter. Following the execution of a search warrant at Stauffer's residence, where a forensic preview of his computer revealed potential CSAM, law enforcement contacted CPS due to the presence of Stauffer's 14-year-old stepdaughter in the home. As a result, and even though there were no allegations against Stauffer, CPS implemented an initial protection plan requiring Stauffer to

leave the residence and have no contact with his stepdaughter. This restriction was to remain in effect for the duration of the investigation or for at least 35 to 45 days. A second one with similar terms was put in place soon after the first expired.

According to the testimony offered by Neva TFO Lizer, United States Probation Officer Moss ("Officer Moss"), Stauffer may not have fully complied the CPS protection plan. His wife testified she was coerced into signing the plan and was under the impression that Stauffer could remain at the residence so long as her daughter was not present. She testified that he initially stayed in a trailer located on the property and that he later moved into a separate downstairs apartment. She further asserted that CPS was aware of this arrangement and raised no objections.

The government argues that Stauffer failed to abide by these restrictions. TFO Lizer testified that Neva's daughter told a friend Stauffer was staying at the home. Additionally, on the day of Stauffer's arrest, law enforcement observed him leaving the residence with Neva. Officer Moss further noted that the sole address on the PSR was the address of the residence, and made no differentiation between the main residence, a trailer, or any other apartment located in the main residence. Although Neva denied any violations of the CPS protection plan—insisting that her daughter had no contact with Stauffer and may have only seen him outside—the evidence raises serious concerns about his willingness to adhere to court-imposed conditions, particularly conditions to protect the safety of a minor.

Stauffer's selective compliance with these protection plans further underscores the Court's concerns regarding his candor and ability to follow legal directives. His

failure to strictly abide by CPS-mandated restrictions suggests a disregard for the very conditions designed to mitigate danger, reinforcing doubts about his willingness to comply with any release conditions imposed by this Court.

### 4. Nature and Seriousness of the Danger

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4). Even where there is no physical contact with an actual child, courts have found that engaging with child exploitation materials causes real, lasting harm to real victims. *See Pece*, 2020 U.S. Dist. LEXIS 197356, 2020 WL 6263640, at *6–7 (recognizing the danger of such images because they "permanently records the victim's abuse, and [their] continued existence causes the child victims of sexual abuse continuing harm by haunting those children in future years"); *id.* (observing that "possessors of child pornography aid in creating and sustaining a market for such material"); *United States v. MacEwan*, 445 F.3d 237, 249–50 (3d Cir. 2006) (noting that "child pornography is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved"); *Downs*, 406 F. Supp. 3d at 1320 ("The sexual abuse of minors 'leaves indelible memories' from which a 'victim will likely continue to suffer throughout her life . . . .'")(quoting *United States v. Taylor*, 736 F. App'x 216, 222 (11th Cir. 2018)); *see also United States v. Kinison*, No. 5:12-CR-57-JBC-REW, 2012 U.S. Dist. LEXIS 136760, 2012 WL 4433296, at *4 (E.D. Ky. Sept. 24, 2012) (finding substantial danger risk where evidence demonstrated

that the defendant had "a plain, prurient interest in children" and had been handling child exploitation materials).

Under this BRA factor, the Court assesses both "the magnitude of the harm that will occur if the danger materializes and of the probability that it will materialize." *United States v. Boyd*, 475 F.3d 875, 877–78 (7th Cir. 2007). As another court put it, "[a]dequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (en banc). Here, the potential harm is immense. The United States has presented probative evidence that Stauffer had contact with his stepdaughter despite a CPS protection plan explicitly prohibiting such contact. This concern is amplified by the fact that Stauffer's stepdaughter is around the same age as the victims depicted in the CSAM recovered from his devices—and almost the same age as the victim in his 1997 rape conviction.

This factor weighs heavily in favor of finding Stauffer a danger to the community. The United States has, thus, shown by clear and convincing evidence that Stauffer is a danger to the community and to others. The Court has already highlighted concerns that no release condition could sufficiently mitigate that danger. Most notably, Stauffer's selective disclosure and lack of candor regarding his sex offender compliance weigh against any assurance that he would abide by court-imposed conditions. If the Court cannot rely on Stauffer's own assurances, it must look to his wife, who insists he will comply. But the nature of offenses like his often

means that even the defendant's closest family members remain unaware of the conduct occurring under their own roof. As one court observed, "[r]eceipt . . . and possession of child pornography are extremely dangerous to the community, particularly because such activities are often hidden from a defendant's closest friends and family members." *United States v. Tang*, No. 19-cr-00014, 2019 U.S. Dist. LEXIS 98602, 2019 WL 2453655, at *4 (E.D. Ky. June 12, 2019).

While the full scope of Stauffer's conduct has yet to be determined, the evidence indicates that he possessed CSAM for years, including since he began living with Neva and her daughter in 2020. Given this, the Court finds little reassurance that Neva would be able to ensure his compliance with any release conditions. The potential danger to others—particularly Neva's minor daughter—and the community at large is far too immense to justify release without assurances this Court's release conditions will be followed.

### III.  CONCLUSION

The Court finds that the United States failed to prove by a preponderance of evidence that Stauffer is an irremediable risk of nonappearance, but they did prove by clear and convincing evidence that Stauffer is an irremediable danger to the community. As such, the BRA mandates detention. The Court has assessed the record, contemplated the risks, evaluated conditions, and determined that no conditions exist that can reasonably assure Stauffer will not pose a danger to another or the community. Accordingly, the Court **GRANTS** the United States' oral motion for detention and **DETAINS** Defendant William Jack Stauffer.

The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Signed this the 7th of March, 2025.

*Matthew A. Stinnett*
MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY